```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                  NORTHERN DIVISION
```

ENCORE DEC, LLC                                          PLAINTIFF

VS.                              CIVIL ACTION NO. 3:19CV80TSL-RHW

JAXON ENERGY, LLC                                        DEFENDANT

JAXON ENERGY, LLC                                 COUNTER-PLAINTIFF
AND EMERALD PARTNERS, LLC                     THIRD-PARTY PLAINTIFFS

VS.

ENCORE DEC, LLC AND                              COUNTER-DEFENDANT
GREENSTONE PRODUCTS, LLC                      THIRD-PARTY DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff Encore DEC, LLC (Encore) has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on its complaint against Jaxon Energy, LLC (Jaxon), and third-party defendants, Encore and Greenstone Products, LLC (Greenstone), have separately moved for summary judgment as to the third-party complaint filed against them by third-party plaintiffs Jaxon and Emerald Partners, LLC (Emerald). The briefing on these motions is complete, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that both motions for summary judgment are well-taken and should be granted.

Encore brought this action against Jaxon for breach of contract, alleging that Jaxon failed to pay certain invoices submitted by Encore for the costs of services/personnel provided

1

by Encore to Jaxon under a certain Start Up Services Agreement (Agreement) executed between these parties on July 28, 2018,[1] and it has now moved for summary judgment contending that the undisputed material facts establish its entitlement to payment of these invoices as a matter of law.  In response, Jaxon argues that (1) any claim by Encore for payment of these invoices was released by virtue of a December 13, 2018 Settlement Agreement between Greenstone and Emerald, and/or (2) under the terms of a certain Membership Interest Purchase Agreement (MIPA) executed between Greenstone and Emerald, the invoices, or portions of the invoices representing costs of services provided by Randy Soule, are not reimbursable because Greenstone and Encore failed to secure Jaxon's and/or Emerald's approval to hire Soule, as required under the terms of the MIPA.  Jaxon's position is without merit.  The Settlement Agreement on which Jaxon relies was between Greenstone and Emerald.  Jaxon and Encore were not parties to that Settlement Agreement.  Emerald and Jaxon have presented an affidavit from Chad Tate, one of two members of Emerald, who participated in the negotiations for the Settlement Agreement.  Tate states that "[i]t was negotiated and agreed upon by the parties" prior to execution of the Settlement Agreement "that said Agreement discharged and extinguished any

---

[1]    Although the Agreement is undated, there is no dispute as to the date of its execution.

2

and all debts owed by Jaxon Energy L.L.C. as to all entities and entity affiliates of the parties to the Agreement including but not limited to the disputed Encore DEC, LLC invoices which are in dispute."

Under applicable Mississippi law in this diversity action, "[i]t is a question of law for the court to determine whether a contract is ambiguous and, if not, enforce the contract as written." Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So. 2d 748, 751 (Miss. 2003). In matters of contract interpretation, the court looks first to the words of the contract "to the exclusion of parol evidence." Id.

> The court's concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. On the other hand, if the contract is unclear or ambiguous, the court should attempt to harmonize the provisions in accord with the parties' apparent intent. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent.

Id. (internal quotation marks and citations omitted). If the agreement is ambiguous and the court is not able to ascertain its meaning by applying canons of contract construction, only then should the court consider extrinsic or parol evidence. Id. "It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be

considered in determining the parties' intentions in the construction of the contract." Id.  Given these principles, it follows that what Tate may have understood or intended or believed is not pertinent; the Settlement Agreement is not ambiguous and does not relieve Jaxon of the debt alleged to be owed under its Agreement with Encore.

Moreover, while the MIPA does include a provision purporting to require that Greenstone and/or Encore secure approval of Jaxon or Emerald before hiring employees of Jaxon or entering into contracts on behalf of Jaxon,[2] Randy Soule was not hired to work for Jaxon but rather performed services for Jaxon as an employee of Encore.  For these reasons, and since Jaxon offers no other defense to payment of the subject invoices, the court concludes that Encore's motion for summary judgment on its claim against Jaxon should be granted.[3]

---

[2]   Paragraph 1.3.3 of the MIPA recited:
      However, [Greenstone] shall have no authority to hire any employees of [Jaxon] or [Emerald] nor shall [Greenstone] possess any right to enter into any contracts or other agreements on behalf of [Jaxon] or [Emerald] in any manner.  Notwithstanding, in the event that [Greenstone] deems it necessary that additional employees be hired due to attrition or other loss of employees or to enter into certain contracts in order to bring the Plant operational and into production, authorization to hire same and/or enter into such contracts will not be unreasonably withheld by [Emerald].

[3]   The three invoices totalled $106,812.15.

4

Emerald and Jaxon have asserted a counterclaim against Encore and Greenstone for alleged breach of a no-compete/no-solicitation provision contained in the MIPA between Greenstone and Emerald and a putative claim for tortious interference with business relations based on the facts relating to this alleged breach.  The breach of contract claim fails as any such claim was released by the clear and unambiguous terms of the Settlement Agreement between Emerald and Greenstone.  The Settlement Agreement states that Emerald "releases [Greenstone] from any further responsibility under the MIPA regarding the Plant or otherwise, …."  There was only one exception, namely, that Greenstone would be "under a continuing obligation to provide Buyer with any and all documents, data or other information relative to the 'Plant' or the operation of the 'Plant' which are in the possession of Seller upon the reasonable request of same from Buyer."  The release contained no exception for the no-compete/no-solicitation provisions of the MIPA.  See Gilchrist Tractor Co. v. Stribling, 192 So. 2d 409, 415 (Miss. 1966) ("Where only one exception is mentioned in a contract, the rule of *expressio unius est exclusio alterius* applies and exceptions not mentioned cannot be engrafted upon it.").

Emerald's and Jaxon's claims for tortious interference with business relations apparently are based on Greenstone's and/or

Encore's having allegedly (1) interfered with Jaxon's contract/business relationship with Corso Systems, a company that had contracted to provide certain services to Jaxon; and (2) induced Jaxon's plant manager, Bob Selman, to leave his employment with Jaxon and go to work for Encore.[4]

As to Selman, Emerald/Jaxon assert in their response brief that in December 2018, Selman, "at the insistence of Encore and Randy Soule, received a $25,000 bonus from Jaxon Energy, absconded, leaving Jaxon Energy with no plant manager, never to be heard from again, and began work for Encore in January 2019". They argue that "this action in soliciting Selman were intentional and willful, were calculated to damage Jaxon Energy, were malicious, and caused Jaxon Energy to suffer damage and

---

[4] In the counterclaim's count for "tortious interference with business relations", Emerald/Jaxon allege that Encore and/or Greenstone "intentionally and willfully *violated the terms of the Purchase Agreement* by interfering with or attempting to interfere in the business relations between Jaxon Energy and its *customers, suppliers, licensees, licensors, franchisees, owners, lessors, or other businesses*." (Emphasis added). There is no allegation in this count, or elsewhere in the complaint that Encore/Greenstone interfered in any relationship, contract or otherwise, with any employee, or with Bob Selman in particular. In response to an interrogatory seeking the identity of the persons or entities in whose relationships Encore and/or Greenstone allegedly interfered, Emerald/Jaxon responded, "CORSO Systems; Erlach Computer Consulting." The allegation that Encore/Greenstone solicited Bob Selman to leave Jaxon was identified solely as the basis of the breach of contract claim, not the tortious interference with business relations claim. In response to the present motion, Emerald/Jaxon do not contend that there was any tortious interference with any relationship with Erlach Computer Consulting.

6

loss as it was left without a plant manager." It appears undisputed that Selman is now employed by Encore and that he began work for Encore in January 2019.  However, Emerald/Jaxon have offered no evidence regarding the circumstances of his departure from Jaxon and subsequent employment by Encore.  The only evidence of record, in fact, is a sworn interrogatory response by Encore, in which it states that it "did not induce or attempt to induce Selman to leave the employ of Jaxon Energy."  No evidence has been offered to the contrary, or to establish any of the other elements of a claim for tortious interference with contract/business relations involving Selman.  Certainly, the mere fact that Selman left Jaxon and became employed by Encore a month later is not sufficient to establish a claim for tortious interference.

Regarding Corso, in the face of a sworn interrogatory response from Encore and affidavit of Randy Soule explaining and attesting to the absence of any interference with any contract or business relationship between Jaxon and Corso, Emerald/Jaxon have offered an email thread between Jaxon and Corso in which Corso's representative insisted that since Corso had originally been contracted by Soule (Encore) to perform services for Jaxon, Corso would need to get Soule's approval to do additional work for Jaxon or to enter a new contract with Jaxon going forward.  However, Soule, who was not included as a recipient of these

7

emails, has attested that, to his knowledge, the previous contract he executed with Corso had been completed months before these emails and that Jaxon/Emerald never approached him about the matter.  Assuming, as the emails indicate, that Corso was, in fact, unwilling to do business with Jaxon without Soule's approval, that does not support a reasonable finding that Encore/Greenstone tortiously interfered with Jaxon's business relationship, particularly as Jaxon never even communicated with Soule concerning Corso's position.[5]

Based on all of the foregoing, it is ordered that both of Encore's motions for summary judgment are granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 3rd day of June, 2020.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[5]   To the extent that Encore, as a signatory to the MIPA, could have had a duty under the MIPA to refrain from competing against and/or soliciting from Jaxon/Emerald, there is no proof that it did so.  See infra at pp. 7-8.